Filed 2/8/16  P. v. Hamilton CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B257028 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. Nos. NA096378/NA098533) |
| v. | |
| ERIC DEWAYNE HAMILTON, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Gary J. Ferrari, Judge.  Affirmed.

Kevin Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Zee Rodriguez and David Zarmi, Deputy Attorneys General for Plaintiff and Respondent.

_____

Appellant Eric Dewayne Hamilton appeals from the judgment entered after his jury conviction of one count of witness intimidation under Penal Code section 136.1, subdivision (a)(2).[1] He seeks reversal on the ground the evidence does not support a finding that he attempted to dissuade the victim from attending or giving testimony, as required by section 136.1, subdivision (a)(2). We find there is substantial evidence to support the conviction and affirm the judgment.

## FACTUAL AND PROCEDURAL SUMMARY

Kimberly C., a witness for the People, testified at a preliminary hearing on August 7, 2013, that on July 22, 2013, Hamilton came into her house through the window, attempted to choke her, and then lit her son's t-shirt on fire and threw it at her. After the preliminary hearing, the court issued a protective order prohibiting Hamilton from contacting Kimberly. On August 21, 2013, Hamilton was charged with arson (§ 451, subd. (d)) and battery (§ 242). On September 2, 2013, Hamilton left a voice message on Kimberly's phone. The transcript of the phone recording states:

> Kim baby, please um, let me start calling you, I'm scared to call you girl, they say I'm facing 11 years, you my fuckin' wife, what the fuck is this shit, we get into one little incident and you flap on me and you know my momma 'bout to die, I'm fuckin' callin' [] and everybody to contact you, I will give you money,and I know I ain't supposed to be saying this shit, you could fuck me over in court right now just by saying this shit, baby please don't fuckin' do me like this, you feel me, come get this shit up off of me, I need a visit from you, I fuckin' got callin' card, I'm scared to spend, my family love you and man we suppose to get marry, what the fuck is this, Kim, baby please don't go out like this, I swear the fuckin' god on my life, you want me to stay away from you, I'll stay the fuck away from you, you know 11 years, Kim, get it off of me 32 months, but 11 fuckin' years, everybody in my whole family got your address, I don't even know if your apartment is 1 or 15, because it's gone get ugly Kim, Imma have to fight

---

[1] All further statutory references are to the Penal Code.

you with CPS and all type of other shit, baby, please do not go out like that, I promise to fuckin' god, come see me Kim, we gots some talk.[2]

Hamilton was subsequently charged with witness intimidation pursuant to section 136.1, subdivision (a)(2), a felony. That section punishes a knowing and malicious attempt "to prevent or dissuade any witness or victim from attending or giving testimony at any trial, proceeding, or inquiry authorized by law." (§ 136.1, subd. (a)(2).) At trial, Kimberly testified that she recognized the voice on the message as belonging to Hamilton and that she was "terrified" when she testified at the preliminary hearing charging Hamilton with witness intimidation. Prior to trial, the count for battery (§ 242) was dismissed. The trial court declared a mistrial on the arson charge (§ 451, subd. (d)), following a hung jury. Hamilton was convicted of the remaining count for witness intimidation, pursuant to section 136.1, subdivision (a)(2), and sentenced to a prison term of three years.

## DISCUSSION

In determining whether the evidence in a criminal case is sufficient to support the verdict, the test is "'whether, on the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] On appeal, we must view the evidence in the light most favorable to the People and must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.]'" (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.) The test is not whether the evidence established guilt beyond a reasonable doubt but whether the evidence could persuade any reasonable jury to have found guilt beyond a reasonable doubt. (*People v. Johnson* (1980) 26 Cal.3d 557, 576.)

---

[2] The parties stipulate in their briefs that this is an accurate transcript of the recording. Before the recording was played for the jury, the jurors received a transcript of the recording but it was collected after the recording was played and was not admitted into evidence.

3

Hamilton argues the evidence does not support a finding that he attempted to dissuade the victim from attending or giving testimony as required by section 136.1, subdivision (a)(2) because the content of his message does not connote an intent to dissuade Kimberly from testifying or attending a trial, but only an attempt to "persuade [her] to seek leniency with the prosecution on his behalf." Thus, Hamilton argues that although there may have been sufficient evidence to convict him pursuant to section 136.1, subdivision (b)(2), attempting to dissuade a witness from cooperating with the prosecution, or section 137, subdivision (c), attempting to persuade a witness to give false testimony or withhold true testimony, there was insufficient evidence to convict him of the charged offense, a violation of section 136.1, subdivision (a)(2).

It is clear from the phone message that Hamilton was threatening Kimberly—he he told her that everyone in his family had her address and that it was going to "get ugly," he was going to fight her with CPS (child protective services) and "all type of other shit." What he was attempting to accomplish by asking Kimberly to come and see him, "come get this shit up off of me," and "get it off of me" is ambiguous.

Hamilton argues that he did not ask Kimberly not to testify. "'There is, of course, no talismanic requirement that a defendant must say "Don't testify" or words tantamount thereto, in order to commit the charged offenses. As long as his words or actions support the inference that he . . . attempted by threat of force to induce a person to withhold testimony [citation], a defendant is properly' convicted." (*People v. Mendoza* (1997) 59 Cal.App.4th 1333, 1344.) To reverse a conviction for insufficiency of the evidence it must ""'clearly appear that upon no hypothesis whatever is there substantial evidence to support it."' [Citation.]" (*People v. Ford* (1983) 145 Cal.App.3d 985, 988.) The jury could have reasonably interpreted Hamilton's message to Kimberly as a warning or threat not to testify at trial.

Hamilton cites three cases for the proposition that the prosecution cannot meet its burden of proof for each element of the statute if the defendant is not convicted under the proper statute. These cases rely on the conclusion that the Legislature, in creating

separate Penal Code provisions, intended to distinguish between the various methods of witness intimidation.

In *People v. Hallock* (1989) 208 Cal.App.3d 595, 598, the defendant threatened the victim at the time of the original crime, telling her: "'if you tell anybody anything that happened tonight here, . . . I'll blow your house up.'" The defendant was charged pursuant to section 136.1, subdivision (b), attempting to prevent or dissuade a witness from making a complaint or report to law enforcement, but the jury was erroneously instructed on a violation of subdivision (a), attempting to prevent or dissuade a victim from attending or giving testimony at trial. (*Id* at p. 607.) The court rejected the argument that the threat was sufficiently broad to support a conviction under either subdivision (a) or (b), explaining that the "threat could only reasonably have been believed to have been directed at reporting the crime to the police . . . or others in authority that might lead to defendant's arrest" and that it was "unreasonable to conclude that defendant was concerned with testimony at a future trial for a crime for which he had not yet been arrested." (*Ibid.*)

In *People v. Fernandez* (2003) 106 Cal.App.4th 943, 946-947, the defendant was convicted under section 136.1, subdivision (b)(1), attempting to prevent or dissuade another person from making a *report* to law enforcement. The facts clearly established that the defendant drove the witness to the preliminary hearing and begged him not to tell the truth. (*Id.* at p. 946.) The court held that although defendant's conduct would have been punishable as an attempt to influence a witness's testimony under section 137, subdivision (c), had it been charged under that section, it did not constitute a violation of section 136.1, subdivision (b)(1). (*Id.* at p. 951.)

In *People v. Womack* (1995) 40 Cal.App.4th 926, 928-929, the defendant followed a witness for the prosecution who had been placed in protective custody, came up behind him, placed a rope around his neck and brought him to the ground, where he then stabbed the victim with a knife. The defendant told the victim he should have kept his mouth shut. (*Id.* at p. 929.) When a car pulled up, the defendant twisted the rope one last time

5

and his accomplice slashed at the victim's throat, before they fled. (*Ibid*.) The court found the verdicts for attempted murder and attempt to induce a person to give false testimony or withhold true testimony (§ 137, subd. (b)) inconsistent, explaining that "an intent to kill the witness is not coextensive with an intent to influence the testimony of that witness by inducing him or her to give false or withhold true testimony." (*Id.* at pp. 931-932.)

Each of these cases is distinguishable from the facts of this case. Unlike in *People v. Fernandez*, *supra*, 106 Cal.App.4th at page 951 and *People v. Hallock*, *supra*, 208 Cal.App.3d at page 607, the issue in this case is not the timing of the threat. Hamilton threatened Kimberly in an effort to get the charges dropped, and his threat was broad enough to support several reasonable inferences -- he intended to dissuade her from testifying, influence her testimony, or persuade her to seek leniency on his behalf. Because the threat was made after the preliminary hearing and before trial and was sufficiently broad, the jury could reasonably have found that Hamilton's request for Kimberly to "come get this shit up off of me," was an effort to dissuade her from testifying at trial. This case is also distinguishable from *People v. Womack*, *supra*, 40 Cal.App.4th 926, because Hamilton's threat is not inconsistent with other facts of the case. (See *People v. Ochoa, supra,* 6 Cal.4th at p. 1206 [prevailing party entitled to benefit of every reasonable inference and resolution of all conflicts in its favor].)

We find substantial evidence supports the verdict.

**DISPOSITION**

The judgment is affirmed.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.**




EPSTEIN, P. J.


We concur:



MANELLA, J.



COLLINS, J.

7