[No. B201672. Second Dist., Div. Six. Dec. 1, 2008.]

THE PEOPLE, Plaintiff and Respondent, v.
CRAIG X. RUBIN, Defendant and Appellant.

## Counsel

Christine C. Shaver, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Lawrence M. Daniels and Ana R. Duarte, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**YEGAN, Acting P. J.**—Craig X. Rubin asks us to hold that he may lawfully sell marijuana on a constitutional religious freedom theory. The answer is, no. Rubin was convicted by jury of selling marijuana (Health & Saf. Code, § 11360, subd. (a)) and possessing marijuana for sale (Health & Saf. Code, § 11359). The trial court granted probation on condition that he serve 90 days in the county jail. Appellant contends that the trial court erred in excluding reference to the Religious Freedom Restoration Act of 1993 (42 U.S.C. § 2000bb et seq.) and the United States Constitution as part of his religious freedom defense. Appellant makes a similar argument based on the California Constitution. We affirm.

*Facts*

On August 25, 2006, Los Angeles Police Officer Tracye Fields, an undercover narcotics investigator, visited a business named Temple 420 in Hollywood. Appellant introduced himself as the owner and said that Temple 420 was a church in which members could buy marijuana. Appellant had recently opened Temple 420 and planned to sell marijuana from vending machines. The front lobby had a cash register, a large display of water bongs and pipes, and drug paraphernalia and clothing. Neal Lipsky, a Temple member, offered to sell Officer Fields marijuana even though she was not a Temple member.

On November 3, 2006, Officer Fields returned to Temple 420 to purchase marijuana. After Officer Fields filled out a membership application, Adam Sokoloff took her to a room called the temple area. A "Today's Blessings" poster board listed various marijuana types and prices. Jars of marijuana were on tables with labels that matched the marijuana names on the poster board—names like "Purple Power," "Goo," and "Kush." Based on Sokoloff's recommendation, Officer Fields purchased 3.5 grams of "Purple Power" for $60.

On November 8, 2006, Officer Fields and 12 officers executed a warrant to search Temple 420. The officers found and seized, inter alia, nine pounds of marijuana, four digital scales, 16 surveillance cameras, pay-owe sheets, 150 bongs and pipes, jars of marijuana, Ziploc baggies, and packaging materials.

Appellant testified that he was an ordained Universal Life Church minister and started Temple 420 as an online ministry. Appellant was a promarijuana activist and had been profiled in nonreligious magazines such as High Times, Cannabis Culture, Heads, Spunk Magazine, and Time Magazine. In High Times, he was dubbed "The Hollywood Wizard of Weed." Appellant said that he was trying to bring religion to the "pot movement because there is a million people trying to legalize marijuana and a lot of them don't have God in their lives . . . ."

*Religious Freedom Restoration Act*

Appellant claims that he was denied a fair trial because the trial court excluded reference to the Religious Freedom Restoration Act of 1993 (RFRA; 42 U.S.C. § 2000bb et seq.). He argues that RFRA is relevant to whether he intended to aid and abet the sale of marijuana and whether he intended to possess marijuana for sale.

■ RFRA prohibits the government from substantially burdening a person's exercise of religion unless the government can demonstrate the burden "(1) is in furtherance of a compelling governmental interest; and [¶] (2) is the least restrictive means of furthering that compelling governmental interest." (42 U.S.C. § 2000bb-1(b).) When RFRA was first enacted, it applied to all federal and state law. (*City of Boerne v. Flores* (1997) 521 U.S. 507, 516 [138 L.Ed.2d 624, 636, 117 S.Ct. 2157].) In 1997, the United States Supreme Court held that Congress exceeded the scope of its powers in providing that RFRA applied to state laws. (*City of Boerne*, at pp. 535–536 [138 L.Ed.2d at pp. 648–649].)

■ The trial court properly excluded reference to the RFRA on the ground that "it does not provide a defense in this case." RFRA is unconstitutional and does not trump California statutes prohibiting the sale or possession of marijuana for sale. (*People v. Trippet* (1997) 56 Cal.App.4th 1532, 1541 [66 Cal.Rptr.2d 559].) "When the exercise of religion has been burdened in an incidental way by a law of general application, it does not follow that the persons affected have been burdened any more than other citizens, let alone burdened because of their religious beliefs." (*City of Boerne v. Flores, supra,* 521 U.S. at p. 535 [138 L.Ed.2d at p. 648].)

■ The trial court ruled that reference to the RFRA would have marginal probative value and "is outweighed—substantially outweighed by the possibility of misleading the jury as to what is in issue here and [the] consumption of time that that would take." No abuse of discretion occurred here. (Evid. Code, § 352; *People v. Lawley* (2002) 27 Cal.4th 102, 155 [115 Cal.Rptr.2d 614, 38 P.3d 461].) Although a criminal defendant has the right to present defense evidence at trial, there is no due process right to present irrelevant evidence or evidence that creates a substantial danger of misleading the jury. (*Crane v. Kentucky* (1986) 476 U.S. 683, 690–691 [90 L.Ed.2d 636, 644–645, 106 S.Ct. 2142]; *People v. Boyette* (2002) 29 Cal.4th 381, 427–428 [127 Cal.Rptr.2d 544, 58 P.3d 391].)

Appellant argues that the Temple membership agreement refers to the RFRA and corroborates his testimony that the marijuana was for religious purposes. Appellant, however, did not request that the membership agreement be received into evidence. The trial court ruled that appellant could ask Officer Fields about the membership form but not whether the officer researched the information in the form: "I am going to exclude that under [Evidence Code section] 352 for the same reasons, because . . . I think that that is going to confuse the issues and doesn't have probative value of what is involved here." There was no abuse of discretion.

*First Amendment*

█ Appellant's assertion that the trial court erred in excluding defense reference to the First Amendment is also without merit. The United States Supreme Court has determined that a state may prohibit "religiously inspired" drug use without violating the free exercise clause of the First Amendment. (*Employment Div., Ore. Dept. of Human Res. v. Smith* (1990) 494 U.S. 872, 874 [108 L.Ed.2d 876, 882, 110 S.Ct. 1595] (*Smith*).) To permit religious beliefs to excuse acts contrary to law, " 'would be to make the professed doctrines of religious belief superior to the law of the land, and in effect to permit every citizen to become a law unto himself.' [Citation.]" (*Id.*, at p. 879 [108 L.Ed.2d at p. 886].) Appellant was prosecuted for selling and possessing marijuana for sale, not for its religious use. "These activities are only related peripherally, if at all, to the practice of [appellant's] religion." (*People v. Peck* (1996) 52 Cal.App.4th 351, 359 [61 Cal.Rptr.2d 1].)

*Mistake of Law*

Appellant argues that the trial court erred in not instructing on the defense of good faith mistake of law. (CALJIC No. 4.36.1.) Appellant requested the instruction based on the theory that "part of our religion and mission of the religion was a healing mission and we felt we [were] in compliance with state law as well as with federal law." But he did not expressly testify to this effect. The trial court rejected the argument because "there was no testimony about that . . . . [T]he law is clear what is required in terms of medical marijuana and there has been no testimony about a doctor's recommendation or approval or anything like that . . . ."

Appellant agreed there was no state law exempting religion but claimed *"there is a federal statute* and we felt that the state would not be able to diminish our federally granted law." (Italics added.) The only federal statute cited by appellant was RFRA which was excluded before trial pursuant to Evidence Code section 352. The application of ordinary rules of evidence did not impermissibly infringe on appellant's constitutional right to present a defense. (*People v. Fudge* (1994) 7 Cal.4th 1075, 1102–1103 [31 Cal.Rptr.2d 321, 875 P.2d 36].)

█ Appellant testified about his "expertise in the bible" but did not say he believed the sale of marijuana was legal. Even if RFRA applied, the statute would have protected only the use of marijuana for religious purposes, not its sale. (See, e.g., *People v. Urziceanu* (2005) 132 Cal.App.4th 747, 775 [33 Cal.Rptr.3d 859] ["Defendant's good faith mistake of law, while not a defense to the crime of selling marijuana, was a defense to the conspiracy to commit that crime."].) The trial court properly ruled that one's religious

beliefs, no matter how sincere, do not support a mistake of law instruction. "[T]he law recognizes honest purpose, not dishonest ignorance of the law, as a defense to a charge of committing a crime requiring 'specific intent.'" (*People v. Smith* (1966) 63 Cal.2d 779, 793 [48 Cal.Rptr. 382, 409 P.2d 222].) Based on appellant's construction of the law, the trial court would have to give a mistake of law defense instruction if a defendant founded a church to sell heroin or to practice polygamy. (See, e.g., *Cleveland v. United States* (1946) 329 U.S. 14, 20 [91 L.Ed. 12, 17, 67 S.Ct. 13].)

Appellant claims that he was misled by the trial court to believe that a mistake of law instruction would be given. The record is to the contrary. Before trial, appellant was told that the jury would not be asked to consider RFRA because "it's not a defense in this case" and it would mislead the jury. The trial court ruled that appellant could testify about his religious beliefs and purposes because it was relevant to whether appellant intended to sell marijuana or simply use it for religious purposes. The trial court explained, "Evidence that defendant's intention is to comply with the federal law, I am going to exclude that under [Evidence Code section] 352 because I think what . . . is relevant here is the intent—is there an intent to sell, not is there an intent to comply with the law or not comply with the law." The trial court ruled that whether "Mr. Rubin believes he is in compliance with the California Constitution, that raises the same issues. That is not going to be a jury issue" and "[i]t's not a defense that is going to the jury."

### State Constitution

Appellant asserts that his activities were protected under the California Constitution which guarantees the "[f]ree exercise and enjoyment of religion without discrimination or preference . . . ." (Cal. Const., art. I, § 4.) "The short and simple answer to this contention is found in the United States Supreme Court's decision in [*Smith*] (the opinion which allegedly motivated the Congress to pass RFRA). This relatively recent decision made clear that a state may prohibit 'religiously inspired' [citation] drug use without running afoul of the free exercise clause of the First Amendment." (*People v. Trippet, supra*, 56 Cal.App.4th at p. 1541, citation omitted.)

Appellant argues that *Smith* is not controlling because our state Constitution provides greater protection and requires that the prosecution show that statutes prohibiting the sale or possession for sale of marijuana serve a compelling state interest and are narrowly tailored to advance that interest. Our Supreme Court has held that our state Constitution protects the

free exercise of religion, not peripheral activities. (*Catholic Charities of Sacramento, Inc. v Superior Court* (2004) 32 Cal.4th 527, 561–562 [10 Cal.Rptr.3d 283, 85 P.3d 67]; *North Coast Women's Care Medical Group, Inc. v. Superior Court* (2008) 44 Cal.4th 1145, 1150 [81 Cal.Rptr.3d 708] [doctor has no religious exemption to Unruh Civil Rights Act (Civ. Code, § 51 et seq.) in treating patients].) If appellant could claim a free exercise exemption based on the state Constitution, it would impair a compelling overriding state interest in controlling drug trafficking. (*People v. Peck, supra*, 52 Cal.App.4th at p. 361.)

The cases relied upon by appellant involve the sacramental use of a controlled substance rather than its sale. (*Gonzales v. O Centro Espírita Beneficente Uniao do Vegetal* (2006) 546 U.S. 418, 436–437 [163 L.Ed.2d 1017, 1035, 126 S.Ct. 1211] [use of hallucinogen as part of religious rite]; *People v. Woody* (1964) 61 Cal.2d 716, 717 [40 Cal.Rptr. 69, 394 P.2d 813] [use of peyote to perform religious ceremony].) In *Woody*, the ceremonial use of peyote was "the *sine qua non* of defendants' faith. It [was] the sole means by which defendants are able to experience their religion; without peyote defendants cannot practice their faith." (*Id.*, at p. 725.)

Appellant presented no evidence that he was unable to practice his religious beliefs without selling marijuana or that he had to use marijuana to perform religious services. (See, e.g., *People v. Torres* (1982) 133 Cal.App.3d 265, 277 [184 Cal.Rptr. 39]; *People v. Werber* (1971) 19 Cal.App.3d 598, 608–609 [97 Cal.Rptr. 150].) Appellant testified that "I have been involved in the cannabis movement for years and I felt like a lot of people worship pot and they think pot can heal them. *And I don't believe that.* I believe God does the healing, that Jesus heals people and pot makes them feel better." (Italics added.)

█ Unlike *People v. Woody, supra*, 61 Cal.2d 716, the ceremonial use of marijuana is not the sine qua non of appellant's faith and religious beliefs. Appellant was prosecuted for selling and possessing marijuana for sale, not for its ceremonial use. (See, e.g., *People v. Peck, supra*, 52 Cal.App.4th at p. 359.) We accordingly reject the argument that he had a due process right to present evidence that drug trafficking under the guise of an "online ministry" or a church vending machine is a protected religious activity under the United States and California Constitutions. "[W]hile religious *belief* is absolutely protected, religiously motivated *conduct* is not. [Citations.] Such conduct 'remains subject to regulation for the protection of society.' [Citation.]" (*Molko v. Holly Spirit Assn.* (1988) 46 Cal.3d 1092, 1112–1113 [252 Cal.Rptr. 122, 762 P.2d 46].)

## Conclusion

It is unnecessary to pass on whether appellant sincerely believes that he may use religion as an umbrella to shield him from the salutary rules protecting society from drug peddlers. It is sufficient to observe that appellant's theory is at variance with not only constitutional law, it is at variance with common sense.

The judgment (order granting probation) is affirmed.

Coffee, J., and Perren, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 25, 2009, S169061.