Filed 5/1/23 P. v. Burgess CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE, | C095650 |
| Plaintiff and Respondent, | (Super. Ct. No. STK-CR-FDV-2019-0012172) |
| v. | |
| TRAVIS BURGESS, | |
| Defendant and Appellant. | |

A jury found defendant Travis Burgess guilty of assault likely to cause great bodily injury, domestic violence, intimidating a witness (two counts), and dissuading a witness. The trial court sentenced defendant to 13 years in state prison.

On appeal, defendant contends that the witness dissuasion conviction under Penal Code section 136.1, subdivision (b)(2)[1] should be reversed, asserting the statute only applies to efforts to dissuade a witness prior to charges being filed. The prosecution

---

[1] Undesignated statutory references are to the Penal Code.

1

charged witness dissuasion based on telephone calls from jail defendant made to the victim, more than a month after the prosecution filed a criminal complaint against him. We will reverse defendant's conviction for witness dissuasion and remand for resentencing.

## FACTUAL AND PROCEDURAL BACKGROUND

The prosecution charged defendant in an information with assault likely to cause great bodily injury (§ 245, subd. (a)(4); count 1), willful infliction of corporal injury to a cohabitant and a person with whom defendant had a dating relationship (§ 273.5, subd. (a); count 2), attempting to dissuade a witness from testifying (§ 136.1, subd. (a)(2); counts 3 & 4), dissuading a witness from prosecuting a crime (§ 136.1, subd. (b)(2); count 5), and contempt of court (§ 166, subd. (c)(1); counts 6, 7, 8 & 9).[2] As to counts 1 and 2, the information further alleged that defendant inflicted great bodily injury under circumstances involving domestic violence (§ 12022.7, subd. (e)) and, as to count 2, defendant had suffered a prior domestic violence conviction (§ 273.5, subd. (f)(1)).

A detailed recitation of the facts underlying defendant's assault and domestic violence convictions is not necessary to resolution of this appeal. The following summary will suffice.

The victim began dating defendant in February 2018. Both the victim and defendant used methamphetamine and alcohol daily, and their relationship, amicable at first, turned into screaming matches and physical altercations. On two occasions in July 2019, the victim called police to the home she shared with defendant in Manteca, reporting that defendant had struck her, pushed her, and thrown her into a wall.

On September 10, 2019, the victim checked into a hotel in Stockton and invited defendant to join her. An argument ensued because defendant believed another man had

_____

[2] Prior to trial, the prosecution dismissed counts 6 through 9 in the interest of justice.

2

been in the room. Defendant choked the victim and threw her on the bed multiple times when she tried to get up. She was bleeding from the nose and chest, and her blood was on the blankets and sheets. On September 11, the victim and defendant changed rooms and another argument erupted. Defendant pushed her into a wall, punched her face, and kicked her. The hotel manager, responding to reports of a female screaming in the room, knocked on the door and asked to speak to the woman in the room. Defendant told the manager through the closed door that the woman was in the shower. When the victim opened the door, the manager saw the victim with her makeup running, blood on her face, a black eye, and what appeared to be a cigarette burn on her clavicle. She begged the manager not to leave her alone with defendant. She said defendant was going to kill her. The manager called police and defendant packed his belongings and left before they arrived.

On October 22, 2021, the jury found defendant guilty on counts 1 through 5 and found true that defendant inflicted great bodily injury. Specifically relevant here, the jury found defendant guilty of violating section 136.1, subdivision (b)(2) for "[d]issuading a witness from causing a Complaint or Information from being prosecuted . . . occurring on or about October 22nd, 2019, to October 26th, 2019 . . . ." The trial court found true that defendant had suffered a previous conviction for domestic violence.

The court sentenced defendant to the upper term of five years on count 2, plus four years for the enhancement; the middle term of two years on counts 3 and 4, consecutive; and two years on count 5, concurrent. Pursuant to section 654, on count 1 the court imposed and stayed a sentence of the middle term of three years, plus four years on the enhancement.

The court sentenced defendant to a total aggregate term of 13 years.

Defendant timely appealed.

## DISCUSSION

## I

### *Section 136.1, subdivision (b)(2)*

Defendant asserts that his conviction under section 136.1, subdivision (b)(2) must be reversed for insufficient evidence, because the statute only applies to a defendant's efforts *prior to arrest* to prevent a crime being reported to law enforcement. Here, the conduct in question consisted of defendant's telephone calls from jail to the victim more than a month after he was arrested and a criminal complaint filed.

We agree with the court in *People v. Reynoza* (2022) 75 Cal.App.5th 181, 189, review granted May 11, 2022, S273797 (*Reynoza*), which held that "section 136.1[, subdivision ](b)(2) requires proof that, among other things, the defendant attempted to prevent or dissuade another person from causing a complaint, indictment, information, probation or parole violation to be filed. If the defendant was aware the relevant charging document had already been filed, and the defendant did not attempt to prevent or dissuade the filing of any amended or subsequent charging document, the defendant has not violated section 136.1[, subdivision ](b)(2)."

Accordingly, we reverse defendant's conviction on count 5 for violation of section 136.1, subdivision (b)(2).

### A. Background

On September 12, 2019, the prosecution filed a criminal complaint against defendant. On September 18, 2019, he was arrested.

On October 22, 2019, defendant spoke to the victim by telephone from jail.[3] The victim told defendant that she would be attending his preliminary hearing, originally

---

[3] The parties stipulated that the calls were properly authenticated and took place on the dates indicated. The prosecutor passed out transcripts of the telephone calls to the jury and played the audio recordings. The trial court admonished jurors that the transcripts

scheduled for the following day. Defendant responded, "Oh man, that's not good." When the victim asked if she should not attend, defendant said, "No, hell no." When she asked why, defendant said, "Babe I mean babe I'm not going to tell you what to do over the phone but if you did, I'll be gone, you won't ever see me again probably." Toward the end of the conversation, defendant said, "I hope I don't see you until you pick me up, that's all."

On October 24, 2019, in another telephone call from jail, the victim told defendant she had been served with a subpoena. Defendant responded that he was "fucked," because "this all backfired this is not good." He explained, "I was hoping they were going to give me, I I denied you know what I mean because I figured that you know what I mean? That you weren't going to go." Defendant said, "I'm not telling you what to do babe at all, not even close, I'm just telling you that, you gotta say hey I want him out of jail, I love him, and we could we could go to counseling together, that's my husband, I love him, I'm engaged to him. I mean you gotta."

On October 26, 2019, when defendant and the victim spoke again on the telephone, defendant suggested the victim "could go to the doctors the night before [her court appearance] and tell them you had an anxiety attack or something like that . . . ." When the victim raised the possibility of the court issuing a bench warrant if she did not appear, defendant said a friend in jail with him had suggested that the victim "could just say we were drunk, just say hey we were, we we were drunk you know what I mean and we were drinking all night and we were drinking all day and I don't know what really happened, I kind of blacked out and it will be a done deal." Defendant reported that in his friend's case, "they did nothing to her uh, she said that she made up the whole story because she was upset at him this and that and nothing ever happened to her," and "his

___

were only an aid to follow and understand the recordings and the recordings were the actual evidence. However, the transcripts were admitted as exhibits for purposes of appeal and are cited by the parties in their briefs.

deal got better and that was it." Defendant urged the victim "you can do what you want to do but uh, anything, just tell them the truth and just say I was drunk, we were up all night drinking." Defendant asked her to say, "I attacked him and he just pushed me off him," and he assured her that "[n]othing at all going to happen to you, they are going to drop everything, drop charges and everything." Defendant continued that the victim should say, defendant "didn't have a choice," and "you came at me, but you can't say like that I tried to make you unconscious . . . ." Defendant acknowledged that "I know what went down but for right now" she should say it was defendant protecting himself.

On October 31, 2019, defendant told the victim "now you can get lost again, they can't find you, you just get lost again," and "I'm just telling you you don't have to show up, don't show up anymore you don't have to, it's up to you."

### B. Analysis

In determining whether a conviction is supported by sufficient evidence, " 'we do not determine the facts ourselves. Rather, we "examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence— evidence that is reasonable, credible and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citations.] We presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.] [¶] . . . "[I]f the circumstances reasonably justify the jury's findings, the judgment may not be reversed simply because the circumstances might also reasonably be reconciled with a contrary finding." [Citation.]' " (*People v. Nelson* (2011) 51 Cal.4th 198, 210.)

We review the interpretation of a statute de novo. (*People v. Gonzales* (2018) 6 Cal.5th 44, 49.) Our objective is to ascertain the Legislature's intent to effectuate the purpose of the law. (*People v. Johnson* (2022) 79 Cal.App.5th 1093, 1108.) "Because the statutory language is generally the most reliable indicator of that intent, we look first at the words themselves, giving them their usual and ordinary meaning." (*Alford v.*

*Superior Court* (2003) 29 Cal.4th 1033, 1040 (lead opn. of Werdegar, J.).) When the statutory language is unambiguous, its plain meaning controls. (*Johnson*, at p. 1109.) We also "generally must 'accord[] significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose,' " and " '[a] construction making some words surplusage is to be avoided.' " (*People v. Valencia* (2017) 3 Cal.5th 347, 357.) If the language supports more than one reasonable construction, we may look to extrinsic aids, including legislative history. (*People v. Ruiz* (2018) 4 Cal.5th 1100, 1106.)

The jailhouse telephone conversations the prosecutor offered to prove defendant violated section 136.1, subdivision (b)(2) occurred after the prosecution had filed the initial criminal complaint and defendant had been arrested. At the time of the earliest of these conversations, defendant appeared to be aware of the complaint being filed, given that the first call referenced his preliminary hearing. Thus, the issue before us is whether the statute applies under these circumstances.

Section 136.1, subdivision (b) provides in relevant part: "[E]very person who attempts to prevent or dissuade another person who has been the victim of a crime or who is witness to a crime from doing any of the following is guilty of a public offense and shall be punished by imprisonment in a county jail for not more than one year or in the state prison: [¶] . . . [¶] (2) Causing a complaint, indictment, information, probation or parole violation to be sought and prosecuted, and assisting in the prosecution thereof."[4]

In *People v. Hallock* (1989) 208 Cal.App.3d 595 (*Hallock*), our colleagues in the Fifth District summarized section 136.1, subdivision (b) as prohibiting three types of

---

[4] The other two parts of section 136.1, subdivision (b) prohibit preventing or dissuading a crime victim or witness from (1) "[m]aking any report of that victimization to any peace officer or state or local law enforcement officer or probation or parole or correctional officer or prosecuting agency or to any judge," and (3) "[a]rresting or causing or seeking the arrest of any person in connection with that victimization." (§ 136.1, subd. (b)(1), (3).)

witness intimidation: "Subdivision (b) prohibits preventing or dissuading a witness from (1) reporting the victimization; (2) *causing a complaint or similar charge to be sought*; and (3) arresting or causing or seeking the arrest of any person in connection with such victimization." (*Hallock*, at p. 606, italics added.) In *People v. Fernandez* (2003) 106 Cal.App.4th 943, the court agreed with *Hallock*'s conclusion that "the offenses defined in section 136.1, subdivision (b) targeted pre-arrest efforts to prevent a crime from being reported to the authorities." (*Id.* at p. 950.)

However, in *People v. Velazquez* (2011) 201 Cal.App.4th 219, Division Four of the Second Appellate District rejected the defendant's claim that section 136.1, subdivision (b) applied only to prearrest efforts to dissuade a witness from reporting a crime, and not attempts to persuade a witness to drop charges after the arrest of the perpetrators. (*Velazquez*, at p. 232.) *Velazquez* disagreed with *Fernandez* and rejected its interpretation of section 136.1, subdivision (b)(2) as dictum. (*Velazquez*, at p. 232.) The court concluded: "Subdivision (b)(2) clearly encompasses more than prearrest efforts to dissuade, inasmuch as it includes attempts to dissuade a victim from causing a complaint or information to be prosecuted *or* assisting in that prosecution." (*Id.* at p. 233, italics added.)

But, in *People v. Brown* (2016) 6 Cal.App.5th 1074, the court noted that "under section 136.1, subdivision (b)(2), the perpetrator must attempt to prevent a person from causing a charging document to be sought and prosecuted *and* from assisting in the prosecution. Thus, the prevention must occur before the relevant charging document has been filed." (*Id.* at p. 1082.)

Here, the Attorney General urges us to adopt the *Velazquez* court's interpretation of section 136.1, subdivision (b)(2), that essentially reads the word "*or*" into the statute. Rather, we agree with the *Reynoza* court, which held: "We are persuaded instead by the construction of the statute adopted in *Hallock*, *Brown* and *Fernandez*. Section 136.1[, subdivision ](b)(2) prohibits attempts to dissuade a witness from causing a complaint 'to

8

be sought and prosecuted, *and* assisting in the prosecution thereof.' (§ 136.1, subd. (b)(2), italics added.) The plain meaning of the words '[c]ausing a complaint . . . to be sought and prosecuted' necessarily includes the filing of a complaint. The *Velazquez* court misconstrued the term 'and' to mean 'or,' thereby eliminating that required filing element. By passing over the drafters' use of the conjunctive rather than the disjunctive, the court ignored the canon of statutory construction that 'significance must be given to every word [in a statute] in pursuing the legislative purpose, and the court should avoid a construction that makes some words surplusage.' [Citation.]" (*Reynoza, supra*, 75 Cal.App.5th at p. 188.)

We conclude that *Reynoza* has the better interpretation, for the obvious reason that, unlike *Velazquez*, *Reynoza* does not resort to substituting words with very different meanings to achieve its desired interpretation. However, the Attorney General proposes a novel construction of section 136.1, subdivision (b)(2) to avoid this defect. The Attorney General argues that the phrase "any of the following" in section 136.1, subdivision (b) subject to the statutory prohibition also refers to "assisting in the prosecution" in subdivision (b)(2). Thus, the Attorney General argues that dissuading a witness from "assisting in the prosecution" is a standalone violation of the statute, regardless of when it occurs. This interpretation not only expands section 136.1, subdivision (b)(2) dramatically to apply to witness dissuasion that occurs at any time, but, like *Velazquez*, it requires us to ignore the meaning of a word, in this case "and." We read the word "and" that prefaces "assisting in the prosecution thereof" to indicate that this phrase as modification of the preceding phrase "[c]ausing a complaint, indictment, information, probation or parole violation to be sought and prosecuted." Therefore, the subordinate phrase cannot be unlinked from the main phrase in the manner the Attorney General proposes.

We believe a more reasonable interpretation of the phrase "any of the following" is a reference to the enumerated parts (1), (2) and (3) of subdivision (b) that follow, and

9

not an invitation to parse the language of these parts as if each phrase were its own subpart. Further, as defendant points out, and *Hallock* makes clear, all three parts of subdivision (b) of section 136.1 refer to stages of a criminal prosecution that typically precede filing a complaint: reporting a crime, causing a criminal charge to be filed, and seeking an arrest. (*Hallock, supra*, 208 Cal.App.3d at p. 606.) As *Reynoza* observed, "[o]ther statutory provisions prohibit attempts to dissuade victims or witnesses where charges have already been filed." (*Reynoza, supra*, 75 Cal.App.5th at pp. 189-190, citing § 136.1, subd. (a)(1) & (2) [dissuasion of a witness from testifying or attending trial]; § 137, subd. (c) [attempting to influence testimony or information given to law enforcement].) Thus, we do not interpret "assisting in the prosecution thereof" as an independent action that violates section 136.1, subdivision (b) where criminal charges have already been filed.

Finally, insofar as the statutory language may be deemed ambiguous, in *Reynoza*, the court pointed out that "the legislative history makes clear that legislators understood [the term 'sought and prosecuted'] to refer to the filing of a complaint. The bill analysis generated by the Assembly Committee on Criminal Justice described this subdivision as 'covering the prevention or dissuasion or attempts from . . . [c]ausing an accusatory pleading to be filed, or parole or probation report sought.' [Citation.] Similarly, the report of the Senate Committee on Judiciary described the subdivision as making it a crime 'to dissuade or attempt to dissuade a person from . . . [c]ausing an accusatory pleading to be filed.' " (*Reynoza, supra*, 75 Cal.App.5th at pp. 188-189.)

10

We conclude, as did *Reynoza*, that "[a]bsent substantial evidence proving an essential element of the offense, the conviction under section 136.1[, subdivision ](b)(2) must be reversed." (*Reynoza, supra*, 75 Cal.App.5th at p. 190.)[5]

II

*Remand for Resentencing*

The jury convicted, and the court sentenced, defendant on multiple counts, only one of which we reverse. Thus, we apply the rule that "upon remand for resentencing after reversal of one or more subordinate counts of a felony conviction, the trial court has jurisdiction to modify every aspect of the defendant's sentence on the counts that were affirmed, including the term imposed as the principal term." (*People v. Burbine* (2003) 106 Cal.App.4th 1250, 1259; see also *People v. Buycks* (2018) 5 Cal.5th 857, 893 ["when part of a sentence is stricken on review, on remand for resentencing 'a full resentencing as to all counts is appropriate, so the trial court can exercise its sentencing discretion in light of the changed circumstances' "]; *People v. Jones* (2022) 79 Cal.App.5th 37, 46 ["full resentencing [is] appropriate given the ' "interlocking nature" ' and 'inherently integrated nature' of felony sentencing for a multiple-count conviction"].)

As it happens, defendant also contends this case should be remanded for the trial court to exercise its discretion under the amendments Assembly Bill No. 518 (2021-2022 Reg. Sess.) made to section 654, effective January 1, 2022. Assembly Bill No. 518 amended section 654, subdivision (a) to provide that "[a]n act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions . . . ." (Stats. 2021, ch. 441, § 1.) Former section 654 provided that such an act or omission "be punished under the provision that provides for the longest

---

[5] Accordingly, we need not consider defendant's alternative claim that we should stay the sentence on section 136.1, subdivision (a)(2), if we do not reverse his conviction on section 136.1, subdivision (b)(2).

11

possible term of imprisonment." (Former § 654, subd. (a).) Defendant argues the trial court should be afforded the opportunity to decide under amended section 654 whether to stay the sentence on the domestic violence conviction, which has a higher triad than the assault conviction.

The Attorney General concedes that Assembly Bill No. 518 applies retroactively to nonfinal cases such as defendant's. But the Attorney General argues that defendant forfeited the claim on appeal because he did not raise it in the trial court, and defendant's argument that defense counsel was ineffective does not resurrect the claim, because it would have made no difference if the trial court had sentenced defendant under section 654 as amended.

We need not resolve the matter. On remand the trial court can reconsider all its sentencing choices based on the law and circumstances that apply at the time of resentencing. (*People v. Buycks, supra*, 5 Cal.5th at p. 893.)

## DISPOSITION

Defendant's conviction on count 5 for victim or witness dissuasion (§ 136.1, subd. (b)(2)) is reversed, and the matter is remanded to the trial court for full resentencing on defendant's remaining convictions and sentencing enhancements, consistent with this opinion, the amendments to section 654, and the law and circumstances in effect at the time of resentencing. The court is further directed to prepare an amended abstract of judgment reflecting defendant's new sentence and forward a copy of the abstract to the Department of Corrections and Rehabilitation. The judgment is otherwise affirmed.


_____/s/_____
EARL, J.


We concur:


_____/s/_____
ROBIE, Acting P. J.


_____/s/_____
HULL, J.

13